## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

CHRISTOPHER AYASH,

        Plaintiff,

v.                               CIVIL ACTION NO.   2:24-cv-00720

DAVID BARNETTE
and KARL HAMM,

        Defendants.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed the *Defendants' Motion to Dismiss Plaintiff's "Complaint," or, in the Alternative, for Summary Judgment in Favor of Defendants* (Document 4), the accompanying *Memorandum of Law in Support* (Document 5), the Plaintiff's *Response in Opposition to Defendants' Motion to Dismiss* (Document 20) (sealed), the *Defendants' Reply to Plaintiff's "Response in Opposition to Defendants' Motion to Dismiss"* (Document 21) (sealed), and all attached exhibits.   For the reasons stated herein, the Court finds the motion should be denied.

## FACTUAL ALLEGATIONS

The Plaintiff, Christopher Ayash, is a named beneficiary of the Patricia Louise Ayash Living Trust ("Trust"), created by his late mother ("Grantor") in 2002.   The Trust also names two of the Grantor's other sons as beneficiaries.   The Defendants, David Barnette and Karl Hamm,

serve as Trustees.   The Trust Agreement sets forth the conditions for the distribution and management of the Trust.   The Plaintiff's Non-GST-Exempt[1] Trust is to be distributed as follows:

> After the Beneficiary has reached any one or more of the following ages, the Beneficiary may withdraw principal at any time or times not to exceed in the aggregate: one-third (1/3) in value . . . to the Beneficiary at age forty-five (45), after the Beneficiary attains the age of forty-five (45) years; one-half (1/2) in value after the Beneficiary attains the age of fifty (50) years; and the balance after the Beneficiary attains the age of fifty-five (55) years; provided, however, that the Trustee may deny or delay an otherwise available right of withdrawal if in the Trustee's opinion the Beneficiary is unable to manage his or her own affairs or that such withdrawal would be dissipated or improvidently utilized through intemperate or spendthrift habits, lack of business capacity, or for any other reasons or factors the Trustee may deem relevant at the time, including the Beneficiary's then level of maturity and judgment.

(Document 4 at 15, citing Trust Provision 6.2(c)(v)).

This case is at least the third lawsuit between the parties.   In 2013, the Plaintiff filed a counterclaim ("2013 Counterclaim" or "2013 Lawsuit") in a Kanawha County Circuit Court lawsuit, seeking a declaration that the Defendants improperly allocated Trust receipts between income and principal, and requesting the removal of the Defendants as Trustees.   The court found the Grantor intended for the Trusts to benefit her three sons long-term and "promote [the Plaintiff's] initiative and to not provide for overly exorbitant lifestyles." (Document 19 at 108, citing Trust Provision 7.7(b)) (sealed.)   To effectuate her intent, the court concluded that the "Trustees have broad discretionary authority . . . to consider all facts and circumstances [they] deem relevant to her family and her business interests in any given situation and great flexibility to address those facts and circumstances."   (*Id.*) (sealed.)   In 2015, the Plaintiff filed suit ("2015 Lawsuit") in the Kanawha County Circuit Court seeking an order requiring the Defendants to

---

[1] Generation-Skipping Transfer Tax ("GST").

2

distribute one-third of the Trust's principal to him under Trust Provision 6.2(c)(v)[2] after he reached the age of forty-five.    The case was voluntarily dismissed with prejudice by the parties.

In 2023, upon turning fifty-five, the Plaintiff requested that the Trustees distribute his share of the Trust balance.    The Plaintiff's request was denied multiple times.    The Plaintiff filed this lawsuit in the Kanawha County Circuit Court on September 19, 2024, seeking an order compelling the Trustees to distribute the balance of his Trust share under Trust Provision 6.2(a).    He alleges that the Trustees have breached the Trust Agreement and their fiduciary duties by failing to follow the Trust's instructions and distribute his share of the Trust.    The Defendants removed the action to this Court on December 13, 2024, and filed this motion to dismiss.

### STANDARD OF REVIEW

In their motion, the Defendants pursue alternative paths of relief, namely, dismissal of the Plaintiff's Complaint for its failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or summary judgment pursuant to Rule 56.    A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading.    *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008).    The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."    Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);

---

2  The complaint in the 2015 Lawsuit cites Trust Provision 6.2(c)(v) for the basis of the Plaintiff's claim to one-third of the Trust principal, whereas letters sent by the Plaintiff's previous counsel reference Trust Provision 6.1(b)(iii). (*Compare* Document 4 at 27 *with* Document 4 at 53, 54).    As explained in note 4, Trust Provision 6.1 and the paragraphs that follow it pertain to the Grantor's sons' descendants, rather than her sons.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014).

Rule 12(d) of the Federal Rules of Civil Procedure provides that [i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Court has reviewed the record and finds that both parties have attached exhibits to their submissions, none of which were excluded from this Court's consideration. Therefore, the Court will address the motion as one for summary judgment. Rule 12(d) further provides that "[a]ll parties must be given a reasonable opportunity to present all material that is pertinent to the motion." *Id*. The Court finds that the Defendants expressly included Rule 56 as a possible option for its motion and each party has been afforded an opportunity to present all materials pertinent to the motion.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 322–23. A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor."

4

*Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

## DISCUSSION

The Defendants argue that the Plaintiff's claim is barred under res judicata and collateral estoppel. Further, the Defendants contend that the Plaintiff demonstrated his awareness of the Trust's age-related triggers in the 2015 Lawsuit, and that the filing of the present suit more than two years after the 2015 Lawsuit is impermissible under the applicable statute of limitations. The Plaintiff argues that his claims have not been previously litigated and are thus not barred by res judicata. Additionally, the Plaintiff states that the statute of limitations did not begin to run until he turned fifty-five and was refused his share of the Trust.

5

### A. *Res Judicata and Collateral Estoppel*

The Defendants argue that they are entitled to summary judgment because the Plaintiff's claims are barred by res judicata. In support of this argument, they state that both the 2013 Counterclaim and the 2015 Lawsuit constituted a final adjudication on the merits, involved the same parties present in this case, and addressed whether the Defendants have broad discretion under the Trust. The Defendants argue that the 2013 court decided the Trust Agreement granted the Trustees broad discretion over the distribution of Trust income and even greater discretion over distributions of Trust principal. They state this is a clear decision regarding the Defendants' discretion to make or refuse Trust distributions to the Plaintiff. Similarly, the Defendants argue that the voluntary dismissal of the 2015 Lawsuit operates as a final adjudication on the Defendants' discretion in distributing Trust principal. By assenting to dismissal in that case, the Defendants contend the Plaintiff agreed with the Trustees' broad discretion over Trust distributions.

In response, the Plaintiff argues that his claims here are not identical to those raised in the previous actions, nor could they have been brought previously. He contends that neither party in the 2013 Lawsuit asked the court to resolve questions of distribution under Trust Provision 6.2(a)[3] or what the Trustees were required to do with the Plaintiff's Trust share when he was fifty-five. Rather, the Plaintiff states that the court's decision in the 2013 Lawsuit focused on the Trustees' discretion in apportioning receipts between income and principal. He argues that the 2015 Lawsuit similarly did not address whether the Plaintiff's entire Trust share must be distributed

---

3 The pertinent part of Trust Provision 6.2(a) states that

> [t]he Trustee shall distribute outright, free of trust, each share established for a son or descendant who has attained fifty-five (55) years of age. The Trustee shall hold each share established for a son or descendant who has not attained fifty-five (55) years of age as a separate Non-GST Exempt Trust for Descendant in accordance with paragraph 6.2(c) . . . .

(Document 4 at 11). A review of the documents filed in the 2013 Counterclaim reveals that the only reference the parties made to Trust Provision 6.2(a) was simply to describe that the balance of the Trust estate was to be divided in three shares for the Grantor's sons. (Document 19 at 8, 72, 73) (sealed).

under Trust Provisions 6.1(a)[4] and 6.2(a) but addressed whether Trust Provision 6.2(c)(v) allowed the Plaintiff to withdraw one-third of only the Trust principal at age forty-five. The Plaintiff further purports that settled declaratory judgment actions have no preclusive effect on future lawsuits. He argues that prior lawsuits addressing the Trustees' discretion do not bar future actions based on abuse of discretion. Finally, the Plaintiff asserts that the conduct forming the basis of his claims here did not occur until 2023 and he had no reason to anticipate, ten years prior, that the Defendants would breach the Trust Agreement by failing to distribute his Trust share.

In reply, the Defendants argue "common sense dictates that future events," such as the Trustees later exercising their discretion in denying the Plaintiff his share of the Trust, cannot create a new claim because the 2013 Lawsuit comprehensively addressed the Trustees' discretion. (Document 21 at 3) (sealed). The Defendants liken this case to *Church of New Song v. Establishment of Religion on Taxpayers' Money in Fed. Bureau of Prisons*, wherein alleged constitutional violations occurring at different times in different prisons were treated as the same claim under res judicata. 620 F.2d 648 (7th Cir. 1980). They argue the present case is similar because, although the Trustees' discretionary decisions were made at different times, the underlying cause of action and alleged harm remains the same. Finally, the Defendants argue the Plaintiff had a full opportunity to be heard in prior lawsuits because he was represented by counsel.

Res judicata is intended to bar a relitigation of "causes of action which have been fully and fairly decided." *Blake v. Charleston Area Med. Ctr., Inc.*, 498 S.E.2d 41, 48 (W. Va. 1997) (quoting *Sattler v. Bailey*, 400 S.E.2d 220, 225 (W. Va. 1990)). Under West Virginia precedent, three elements must be satisfied to bar litigation on the basis of res judicata:

---

4 Trust Provision 6.1 instructs the Trustee to hold the Generation-Skipping Transfer Tax amount "for the benefit of Grantor's sons' descendants," as opposed to Trust Provision 6.2, which instructs the Trustee to hold trust property "for the benefit of the Grantor's sons *and* their descendants." (Document 4 at 8, 11) (emphasis added).

> First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.

Syl. Pt. 4, *Blake*, 498 S.E.2d at 44.   The two suits may only be considered identical if the evidence necessary to support both actions is the same.   *Id*. at 48.   "With respect to the third and final element…it is imperative that the party bringing the subsequent lawsuit was, during the prior action, able to foresee the consequences of his/her failure to raise the subsequently raised issue in the prior action."   *Id.* at 49.   Importantly, res judicata applies to "all of the claims actually presented in the prior action as well as all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Skibbe v. Accredited Home Lenders, Inc.*, No. 2:08-CV-01393, 2014 WL 2117088, at *3 (S.D.W. Va. May 21, 2014) (Goodwin, J.).

Collateral estoppel is "closely related" to res judicata.   *State v. Miller*, 459 S.E.2d 114, 120 (W. Va. 1995).   "[C]ollateral estoppel requires identical issues raised in successive proceedings and requires a determination of the issues by a valid judgement to which such determination was essential to the judgment."   *Id.*   Four conditions are required to bar a claim based on collateral estoppel:

> (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

Syl. Pt. 1, *Ruble v. Rust-Oleum Corp.*, 902 S.E.2d 873, 874 (W. Va. 2024).

It is undisputed that the parties here also appeared in the 2013 and 2015 Lawsuits, and that the 2013 Lawsuit concluded with a final adjudication on the merits. The remaining questions are whether a voluntary dismissal in a declaratory judgment action is a final adjudication on the merits, the issues presented in the lawsuits are identical or could have been resolved previously, and whether the Plaintiff had a full and fair opportunity to raise the issues in prior litigation. The Court finds that summary judgment is not warranted under either res judicata or collateral estoppel because the 2015 Lawsuit was not a final adjudication on the merits, the issues presented in the lawsuits are not identical, and the issues could not have been fully and fairly resolved in prior litigation.

The 2015 Lawsuit was voluntarily dismissed by the parties pursuant to Rule 41(a)(1)(ii) of the West Virginia Rules of Civil Procedure. (Document 4 at 60). The West Virginia rule is nearly identical to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure. Under both rules, a voluntary dismissal by the plaintiff is dismissal without prejudice unless otherwise specified. The effect of the 2015 dismissal with prejudice, contrary to the Defendants' assertion, is not a final adjudication on the merits because the Plaintiff did not previously dismiss the same or identical claim. Furthermore, while the Defendants cite several cases stating that a voluntary dismissal with prejudice is a complete adjudication on the merits, those cases concern dismissals under Rule 41(a)(2), which pertains to dismissal by court order. Therefore, the Defendants' reliance on these cases is misplaced.

Because the claims presented in the 2015 Lawsuit were not finally adjudicated, the Court must consider only whether the claims presented in the 2013 Counterclaim are identical to the ones presented here or could have been fully and fairly litigated previously. The Court finds that the issues presented in this case are neither identical, nor could they have been fully and fairly litigated.

9

The 2013 court addressed what constituted income, the Trustees' discretion in apportioning receipts between income and principal, and their discretion in permitting principal withdrawals. Specifically, the 2013 court referred to Trust Provision 6.2(c), where the Trust explicitly states that the Trustees may use their discretion to deny or delay principal withdrawals at the trigger ages. That court did not address Trust Provision 6.2(a), which is at issue here.   Whether Trust Provision 6.2(a), which states "[t]he Trustee shall distribute outright, free of trust, each share established for a son or descendant who has attained fifty-five (55) years of age," is limited by the Trustees' discretion was not a question considered by the court in the 2013 Lawsuit.   (Document 4 at 11).

Further, it is illogical to expect the Plaintiff to predict in 2013 that he would be denied his share of the Trust a decade later.   The alleged injury did not exist until 2023, nor could the Plaintiff have been aware it would occur prior to then.   Accordingly, the Plaintiff did not and could not have fairly and fully litigated his current claims in the 2013 Counterclaim.   The Court finds that this action is not barred by res judicata or collateral estoppel, and the Defendants are therefore not entitled to summary judgment based on these principles.

## B.  Statute of Limitations

The Defendants further contend that the 2015 Lawsuit specifically addressed the scope of their discretion concerning the first trigger age provided in the Trust.   They assert that the 2015 Lawsuit demonstrates the Plaintiff's awareness of the age-related triggers for distributions under the Trust, and that his filing of this suit more than two years later is barred by the statute of limitations.   Additionally, the Defendants argue that while the Plaintiff may assert this claim was filed within two years of his fifty-fifth birthday, this argument fails to account for the fact that the issue of the Defendants' discretion has already been effectively litigated in prior cases.

In response, the Plaintiff argues that the statute of limitations begins to run when an injury is inflicted, which was in 2023 when he turned fifty-five years old. He states that it would be nonsensical to expect him to have foreseen, based on two entirely different lawsuits, that the Defendants would breach the Trust Agreement. Finally, the Plaintiff states that a claim is not justiciable unless it is ripe, and that a claim is not ripe if it rests on contingent future events that may or may not occur.

The Court finds that the statute of limitations does not bar the Plaintiff's claims. Because this case is an action within the Court's diversity jurisdiction, the Court applies the West Virginia statute of limitations and any West Virginia law construing it. *Wade v. Danek Med., Inc.*, 182 F.3d 281, 289 (4th Cir. 1999); *Rahmi v. Jackson Kelly Attorneys at Law*, No. 3:13-CV-132, 2014 WL 1233740, at *5 (N.D.W. Va. Mar. 25, 2014). When considering whether the statute of limitations bars a cause of action, the Supreme Court of Appeals of West Virginia has prescribed a five-step analysis:

> First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if material questions of fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc., supra.* Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine.

11

*Dunn v. Rockwell*, 689 S.E.2d 255, 265 (W. Va. 2009); *Robinson v. Quicken Loans, Inc.*, 988 F.Supp.2d 615, 625 (S.D.W. Va. 2013) (Chambers, J.).

First, regarding the applicable statutes of limitations, claims for breach of fiduciary duty are governed by a two-year statute of limitations.   W. Va. Code § 55-2-12.   A breach of trust claim by a beneficiary against a trustee must be brought within five years of "when the beneficiary knew or should have known of the breach of trust."   W. Va. Code § 44-10-1005(c).

Second, as to the requisite elements of the breach of trust and breach of fiduciary duty, the Plaintiff could have been aware of the asserted causes of action in August 2023 when he was informed by the Defendants that they intended to withhold his Trust share.   However, the Plaintiff did not turn fifty-five until September 23, 2023. While the Defendants argue that the Plaintiff should have been aware of the age-related triggers for distribution of the Trust as early as 2013, the Plaintiff had no way of knowing the Defendants would prevent him from receiving his Trust share after he turned fifty-five.   The Defendants are asking this Court to require plaintiffs to preemptively bring lawsuits for any conceivable future harm they may experience.   That is the exact type of "contingent future event[]" that is not ripe for adjudication and that courts cannot consider.   *State ex rel. Universal Underwriters Ins. Co. v. Wilson*, 801 S.E.2d 216, 224 (W. Va. 2017) (citing *Texas v. United States*, 523 U.S. 296, 300 (1998)).

The Plaintiff filed this suit on September 19, 2024, well before the statute of limitations ran.   Thus, the Court need not consider the remaining steps of the *Dunn* analysis.   Accordingly, the Court finds that the statute of limitations does not bar the Plaintiff's claims and the Defendants' motion for summary judgment must be denied.

**CONCLUSION**

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Defendants' Motion to Dismiss Plaintiff's "Complaint," or, in the Alternative, for Summary Judgment in Favor of Defendants* (Document 4) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:    March 13, 2025

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA