**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

CHRISTOPHER AYASH,

                Plaintiff,

v.                              CIVIL ACTION NO.   2:24-cv-00720

DAVID BARNETTE
and KARL HAMM,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Plaintiff Christopher Ayash's Motion for Summary Judgment* (Document 76), *Plaintiff Christopher Ayash's Memorandum of Law in Support of His Motion for Partial Summary Judgment* (Document 77), the *Defendants'/Counterclaim Plaintiffs' Response in Opposition to "Plaintiff Christopher Ayash's Motion for Summary Judgment"* (Document 90), and the *Plaintiff's Reply in Support of His Motion for Summary Judgment* (Document 93), as well as all accompanying Exhibits.   In addition, the Court has reviewed the *Defendants'/Counterclaim Plaintiffs' Motion for Summary Judgment* (Document 82), the *Memorandum of Law in Support of "Defendants'/Counterclaim Plaintiffs' Motion for Summary Judgment"* (Document 83), the *Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment* (Document 89), and the *Defendants'/Counterclaim Plaintiffs' Reply to "Plaintiff's Response to Defendants' Motion for Summary Judgment"* (Document 92), as well as the *Complaint* (Document 1-1) and all accompanying Exhibits.

## EXPERT REPORT

The Court has also reviewed the *Plaintiff's Motion to Strike Defendants' Expert Christopher Winton* (Document 78), the *Memorandum of Law in Support of Plaintiff's Motion to Strike Defendants' Expert Christopher Winton* (Document 79), the *Defendants'/Counter Plaintiffs' Response in Opposition to "Plaintiff Christopher Ayash's Motion to Strike Defendants' Expert Christopher Winton"* (Document 88), and the *Plaintiff's Reply in Support of His Motion to Strike Defendants' Expert Christopher Winton* (Document 91).   The Plaintiff argues that Mr. Winton's expert opinions should be excluded because they consist of inappropriate legal conclusions.   Specifically, the Plaintiff argues that the opinions are inappropriate because Winton interprets the meaning and purpose of the Trust Agreement and applies that interpretation to the facts of this case.   The Plaintiff also notes that if this Court finds that Mr. Winton's opinions should be excluded, the opinion of his expert, John F. Hussell, IV, should be excluded as well. The Defendants contend that Mr. Winton's opinions are grounded by his knowledge as an experienced trust and estate lawyer and apply his specialized knowledge in trust administration to the facts of the case, and are, therefore, appropriate.

"[O]pinion testimony that states a legal standard or draws a legal conclusion by applying law to facts is generally inadmissible."   *Brainchild Surgical Devices, LLC v. CPA Global Limited*, 144 F.4th 238, 253 (4th Cir. 2025) (quoting United States v. McIver, 470 F.3d 550, 562 (4th Cir. 2006)).   While "[e]xperts—including lawyers—may opine on the 'ordinary practices of those engaged in [a particular] business,'" they are not permitted to "constru[e] a document for its legal effect."   *Id.* (quoting *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 367 (4th Cir. 1986),

*abrogated on other grounds by Pinter v. Dahl*, 486 U.S. 622 (1988)).   An opinion that relies on an interpretation of a legal document is an inadmissible legal conclusion.   *See id.* at 253-54.

Mr. Winton's opinions are inadmissible legal conclusions.   He begins both his initial opinion and rebuttal opinion by interpreting the Patricia Louise Ayash Living Trust ("Trust"). Specifically, he interpreted the language used in Paragraphs 5.4(c) and 6.2(a) of the Trust Agreement, concluding that Paragraph 6.2(a) applied only upon the death of Mrs. Ayash ("Grantor") and that under its express terms, shares were to be distributed outright to any son who had obtained age fifty-five at the time of the Grantor's death, while shares of sons who had not were to be held in trust and governed by Paragraph 6.2(c).   Based on this interpretation, he concluded that "the Non-GST Exempt Trust for the benefit of Christopher Mark Ayash does not terminate when the beneficiary attains the age of 55 but continues under the terms and provisions of the Trust Agreement."   (Document 78-1 at 4.)   Next, relying on his initial interpretation, Mr. Winton interpreted Paragraph 6.2(c) to provide the Trustees with "the discretionary power to deny or delay a request of Christopher Mark Ayash to withdraw all assets from the Trust."   (*Id*. at 6.) Applying this interpretation, as well as West Virginia case law and the West Virginia Uniform Trust Code (UTC), to the facts, he concluded that the Defendants exercised their discretion in good faith, and further concluded in his rebuttal opinion that the Defendants did not breach any of their duties.   Finally, relying on the West Virginia UTC and Paragraph 7.8 of the Trust Agreement, Mr. Winton also concluded that the Defendants were entitled to reasonable commissions and fees for their services as Trustees.

Although the Defendants argue that Mr. Winton is merely applying his specialized knowledge of trust administration, based on his experience as a trust and estate attorney, he goes

3

far beyond providing specialized knowledge in trust administration by interpreting the Trust and applying that interpretation, as well as West Virginia case law and the UTC, to the facts in this case. The Court finds that Mr. Winton's opinions should be excluded as inadmissible legal conclusions and, therefore, **ORDERS** that the *Plaintiff's Motion to Strike Defendants' Expert Christopher Winton* (Document 78) be **GRANTED**.

## FACTUAL BACKGROUND

The Plaintiff, Christopher Ayash, is a named beneficiary of the Patricia Louise Ayash Living Trust ("Trust"), created by his late mother ("Grantor") in 2002. The Trust also named two of the Grantor's other sons as beneficiaries. The Defendants, David Barnette and Karl Hamm,[1] serve as Trustees. The Trust Agreement sets forth the conditions for the distribution and management of the Trust. Paragraph 5.4(c) pertains to the distribution of the Trust property upon the Grantor's death if survived by her sons and directs the Trustee as follows:

> Upon the Grantor's death and after making the payments and advancements provided for above, the Trustee shall divide, transfer, distribute, and administer the Trust Estate as follows. . . If Grantor is survived by descendants, the entire balance of the Trust Estate shall be divided and held in trust in accordance with section 6.2.

(Document 76-1 at 5.) Upon receiving the Trust property under Paragraph 5.4(c), the Trustees, pursuant to Paragraph 6.2(a), are directed to divide and hold the Trust property for the benefit of the Grantor's sons, including the Plaintiff, and their descendants as follows:

---

[1] Defendant Barnette is an attorney who was named as trustee due to his familiarity with the business and family affairs of the Grantor, and Defendant Hamm was named as trustee due to his business relationship with the Grantor and his role of managing her company over a 15-year period prior to her death. (Document 76-1 at 16;) (Barnette Dep. at 66::24-67::13;) (Hamm Dep. at 8::24-9::11.) While the Defendants make decisions collectively with regard to all aspects of the Trust, it appears that Defendant Hamm's primary duties relate to investments and distribution calculations. (Hamm Dep. at 11::7-12::24;) (Barnette Dep. at 12::16-19, 75::14-76::13, 97::18-98::7, 101::23-102::17, 122::5-123::12.)

> The Trustee shall divide the trust property into equal shares so as to provide one share for each of the Grantor's sons who is then living and one share for the then living descendants of each deceased son of the Grantor. The Trustee shall further divide each share created for a deceased son into shares among his descendants, per stirpes. The Trustee shall distribute outright, free of trust, each share established for a son or descendant who has attained fifty-five (55) years of age. The Trustee shall hold each share established for a son or descendant who has not attained fifty-five (55) years of age as a separate Non-GST-Exempt Trust for Descendant in accordance with paragraph 6.2(c), except that any share for Aubrey York Ayash is to be held in accordance with paragraph 6.2(b).

(*Id.* at 9.)   Because the Plaintiff was not fifty-five at the time of the Grantor's death, the Trustees placed his share in a Non-GST-Exempt[2] Trust and have held it in accordance with Paragraph 6.2(c).   The Plaintiff's Non-GST-Exempt Trust, pursuant to Paragraph 6.2(c)(v), is to be distributed as follows:

> After the Beneficiary has reached any one or more of the following ages, the Beneficiary may withdraw principal at any time or times not to exceed in the aggregate: one-third (1/3) in value . . . to the Beneficiary at age forty-five (45), after the Beneficiary attains the age of forty-five (45) years; one-half (1/2) in value after the Beneficiary attains the age of fifty (50) years; and the balance after the Beneficiary attains the age of fifty-five (55) years; provided, however, that the Trustee may deny or delay an otherwise available right of withdrawal if in the Trustee's opinion the Beneficiary is unable to manage his or her own affairs or that such withdrawal would be dissipated or improvidently utilized through intemperate or spendthrift habits, lack of business capacity, or for any other reasons or factors the Trustee may deem relevant at the time, including the Beneficiary's then level of maturity and judgment.

(*Id.* at 12-13.)

This case is at least the third lawsuit between the parties.   In 2013, the Plaintiff filed a counterclaim ("2013 Counterclaim" or "2013 Lawsuit") in a Kanawha County Circuit Court

---

2 Generation-Skipping Transfer Tax ("GST").

lawsuit, seeking a declaration that the Defendants improperly allocated Trust receipts between income and principal, and requesting the removal of the Defendants as Trustees. The court found the Grantor intended for the Trusts to benefit her three sons long-term and "promote [the Plaintiff's] initiative and to not provide for overly exorbitant lifestyles." (Document 80-4 at 24, citing Trust Provision 7.7(b)) (sealed.) To effectuate her intent, the court concluded that the "Trustees have broad discretionary authority . . . to consider all facts and circumstances [they] deem relevant to her family and her business interests in any given situation and great flexibility to address those facts and circumstances." (*Id.*) (sealed.) In 2015, the Plaintiff filed suit ("2015 Lawsuit") in the Kanawha County Circuit Court seeking an order requiring the Defendants to distribute one-third of the Trust's principal to him under Trust Provision 6.2(c)(v) after he reached the age of forty-five. The case was voluntarily dismissed with prejudice by the parties.

Prior to the Plaintiff bringing this lawsuit, he had been incarcerated from October 2015 to April 2023 for a felony conviction. During his incarceration, the Plaintiff participated in various courses and did not receive any infractions. Also, during that time, the Plaintiff exchanged letters with Defendant Barnette, who visited him twice while he was in prison. Upon his release, the Plaintiff spent the first six months in a halfway house and is now currently on supervised release. The Plaintiff has since worked for an attorney, as a legal assistant, and has volunteered at Heart and Hand Outreach Ministries ("Heart and Hand"). His supervisor, as well as the volunteer and community outreach coordinator of Heart and Hand and the director of the halfway house, have indicated, in letters, that they have been impressed with the Plaintiff's accomplishments and that he has engaged in exemplary conduct since his release. (Document 76-6;) (Document 76-7;) (Document 76-8.) Additionally, the Plaintiff has been abiding by his conditions of supervised

6

release.  He also obtained the services of an attorney to draft a will and a trust for him.  The Plaintiff and Defendant Barnette have had two phone calls since the Plaintiff's release, as well as at least one letter exchange. However, contact ceased after Plaintiff's counsel informed the Defendants that they were to no longer have any contact with the Plaintiff. (Barnette Dep. at 48::6-10.)

The Plaintiff discovered, after his release, that his income taxes had not been filed since 2018.  In his deposition, he explained that he failed to file his tax returns due to believing that they were being handled by his wife through his accountant, who had passed away in 2018 without Plaintiff's knowledge.  (Ayash Dep. 196::5-10, 197::5-11) (Document 76-2;) (Document 76-9.) In addition, the Plaintiff had failed to pay his property taxes believing that they were being handled by his wife, as well.   (Ayash Dep. at 98::16-99::10.)   He has since filed his tax returns after hiring an accountant and has paid his property taxes.   (*Id.* at 99::3-22, 196::11-21;) (Woomer Dep. at 15::20-23.)   However, although the Defendants have requested proof of his tax return filings, the Plaintiff, aside from stating that they have been filed, has not provided them with such filings. (Ayash Dep. at 195::20-22;) (Barnette Dep. at 36::5-16, 39::12-15, 53::13-22;) (Hamm Dep. at 23::4-9) (Document 76-12.)

In 2023, upon turning fifty-five, the Plaintiff requested that the Defendants distribute his share of the Trust balance.   The Defendants denied the Plaintiff's request several times.[3]   In his deposition, as well as letters to the Plaintiff, Defendant Barnette claimed that their reason for denying the distribution of the Plaintiff's share was because the Plaintiff has not demonstrated a

---

[3] While the Defendants denied the Plaintiff's request for his entire share, the Defendants continue to provide the Plaintiff with quarterly income distributions from the Trust, which currently amount to $75,000, or $300,000 per year.   (Hamm Dep. at 21:17-20) (Document 76-11.)

level of maturity and judgment that would warrant such a distribution due to, among other things, his felony conviction and incarceration, his being on supervised release, his failure to file his income tax returns, and his failure to pay property taxes.  (Document 76-4;) (Barnette Dep. at 12::11-13::11, 38::16-22) (Document 76-11.)   Additionally, Defendant Barnette claimed that he and Defendant Hamm need more time to assess if the Plaintiff can demonstrate an adequate level of maturity and judgment.  (*Id.* at 12::11-13::11, 45::21-46::1, 47::15-20, 52::21-23, 59::5-60::5.)

The Plaintiff filed this lawsuit in the Kanawha County Circuit Court on September 19, 2024, seeking an order compelling the Trustees to distribute the balance of his Trust share under Trust Provision 6.2(a).  He alleges that Paragraph 6.2(a) requires the Trustees to distribute his share because under its clear terms, it provides that "[t]he Trustee shall distribute outright, free of trust, each share established for a son or descendant who has attained fifty-five (55) years of age." (Pl.'s Compl. at ¶ 1, quoting Trust Provision 6.2(a).)   He further alleges that the Trustees have breached the Trust Agreement and their fiduciary duties by failing to follow the Trust's instructions and distribute his share of the Trust.

The Defendants removed the action to this Court on December 13, 2024.   The Defendants moved to dismiss, claiming that the Plaintiff's claim was barred under res judicata and collateral estoppel, as well as applicable statute of limitations.   This Court denied the Defendants' motion, finding that the Plaintiff's claims were not barred under res judicata and collateral estoppel because the issues in the 2015 lawsuit were not fully litigated, and the issues presented in this case were not identical to the ones presented in the 2013 lawsuit.   This Court further found that the Plaintiff's claims were not barred by the applicable statute of limitations because he filed this action before the statute of limitations began to run.   After the denial of their motion, the Defendants filed an

answer and a counterclaim, claiming that the Plaintiff's share is governed by Paragraph 6.2(c)(v), which grants the Trustees broad discretion to deny or delay the distribution of the Plaintiff's share. The Defendants further request an award of attorneys' fees and costs. Both the Plaintiff and the Defendants now move for summary judgment.

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in

his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No. 11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). Notably, "a plaintiff cannot rely on an unverified complaint" because an "unsworn argument does not constitute evidence" for summary judgment purposes. *Askins v. Belissary*, No. 4:12-cv-1856-RBH, 2014 WL 507279, at *7 (D.S.C. Feb. 6, 2014), *aff'd*, 564 F. App'x 46 (4th Cir. 2014); *United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004) (unpublished decision).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

When presented with motions for summary judgment from both parties, courts apply the same standard of review. *Tastee Treats, Inc. v. U.S. Fid. & Guar. Co.*, 2008 WL 2836701 (S.D. W. Va. July 21, 2008) (Johnston, J.) *aff'd*, 474 F. App'x 101 (4th Cir. 2012). Courts "must review

10

each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law," resolving factual disputes and drawing inferences for the non-moving party as to each motion. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted); *see also Monumental Paving & Excavating, Inc. v. Pennsylvania Manufacturers' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999).

## DISCUSSION

The Plaintiff and the Defendants/Counterclaim Plaintiffs ("Defendants") filed cross-motions for summary judgment as to their claims pertaining to Section 55-13-4 of the West Virginia Uniform Declaratory Judgments Act.   Additionally, the Plaintiff and the Defendants seek summary judgment as to the Plaintiff's breach of trust claim as it pertains to Paragraph 6.2(a) of the Trust Agreement.   Alternatively, the Plaintiff seeks summary judgment as to a breach of trust claim as it pertains to Paragraph 6.2(c)(v) of the Trust Agreement if this Court finds that 6.2(a) does not entitle him to his share at age fifty-five.   The Defendants also seek summary judgment on the Plaintiff's breach of fiduciary duty claim, as well as their claim for attorneys' fees and costs. For the reasons stated herein, the Court finds that the Defendants are entitled to summary judgment as to all of the Plaintiff's claims and as to the Defendants' declaratory judgment claim. The Court further finds that the Defendants are not entitled to an award of attorneys' fees and costs.

*A.   West Virginia Uniform Declaratory Judgment Act - Trust Agreement*

The Plaintiff argues that Paragraph 6.2(a), which provides that "[t]he Trustee shall distribute outright, free of trust, each share established for a son or descendant who has attained fifty-five (55) years of age," requires the Trustees to make a mandatory distribution of Trust shares to each beneficiary that reaches age fifty-five.   (Pl.'s Mem. at 10, quoting Trust Provision 6.2(a).)

11

The Plaintiff further argues that although Paragraph 6.2(a) ends by stating "[t]he Trustee shall hold each share established for a son or descendant who has not attained fifty-five (55) years of age as a separate Non-GST-Exempt Trust for Descendant in accordance with paragraph 6.2(c)," it does not alter the Trust's direction to distribute shares at age fifty-five.  (*Id.*, quoting Trust Provision 6.2(a).)   Rather, the Plaintiff contends that because 6.2(a) deals with "shares" while 6.2(c) deals with "principal," the final sentence of Paragraph 6.2(a) "simply directs trustees to 'hold' 'shares' 'in accordance with paragraph 6.2(c) until a beneficiary turns fifty-five."  (*Id.*)

The Defendants argue that the Trust Agreement, when read as a whole, does not require them to make an outright distribution of the Plaintiff's share upon his reaching the age of fifty-five.   They contend that the Plaintiff relies on narrowly selected language from Paragraph 6.2(a) that does not govern his circumstance because that language applied only at the time of the Grantor's death. They point to Paragraph 5.4(c), which provides that shares are to be held in accordance with Section 6.2 "upon the Grantor's death" if she is survived by descendants.   The Defendants further contend that because the Plaintiff was not fifty-five at the time of the Grantor's death, his share was placed in a separate Non-GST-Exempt trust in accordance with Paragraph 6.2(c) as required by the final sentence of Paragraph 6.2(a).   The Defendants argue that, therefore, Paragraph 6.2(c), which provides them with broad discretion regarding distribution, governs the Plaintiff's share, as opposed to Paragraph 6.2(a), because Paragraph 6.2(c) contains its own terms and conditions relating to the termination of the trust and the distribution of the trust assets.

West Virginia Code § 55-13-4, a provision of the West Virginia Uniform Declaratory Judgment Act, empowers courts "[t]o direct the executors, administrators, or trustees to do or abstain from doing any particular act in their fiduciary capacity."  W. Va. Code § 55-13-4(c).

Because the Plaintiff argues that the Defendants were required, under Paragraph 6.2(a), to distribute his share upon his reaching age fifty-five, this Court must determine whether, under the terms of the Trust Agreement, the Defendants were required to make such a distribution.

Under West Virginia law, "[t]he paramount principle in construing or giving effect to a trust is that the intention of the settlor prevails, unless it is contrary to some positive rule of law or principle of public policy."  Syl. Pt. 1, *Hemphill v. Aukamp*, 264 S.E.2d 163, 164 (W. Va. 1980). "In ascertaining the intent of the settlor, the entire trust document should be considered."  *Id.* at Syl. Pt. 2.   When the language in a trust is clear, courts "must give effect to the words used" and "in accordance with the plain terms set forth in the trust agreement."  *One Valley Bank, Nat. Ass'n v. Hunt*, 516 S.E.2d 516, 521 (W. Va. 1999).

It is clear, based on the language and structure of the Trust Agreement, that the Grantor did not intend to require the Defendants to make an outright distribution of the Plaintiff's share upon his reaching the age of fifty-five.   Although the Plaintiff relies on the language found in Paragraph 6.2(a), which provides that "[t]he Trustee shall distribute outright, free of trust, each share established for a son or descendant who attainted fifty-five (55) years of age," that language does not control because Paragraph 6.2(a) applied only at the time of the Grantor's death, as set forth in Paragraph 5.4(c).   Paragraph 5.4(c) provides that "[u]pon the Grantor's death. . . the entire balance of the Trust Estate shall be divided and held in trust in accordance with section 6.2," if her descendants survived her. This means that the provisions of Section 6.2 applied at the time of the Patricia Ayash's death because she was survived by her sons, including the Plaintiff.   (Document 76-1 at 5.)   Section 6.2 begins with Paragraph 6.2(a), which specifically deals with the division and distribution of shares, and when read in conjunction with Paragraph 5.4(c), demonstrates that

13

Paragraph 6.2(a) applied only at the time of the Grantor's death. Such divisions and distributions would have occurred at that time once the Trustee received the balance of the Trust Estate. Because the Plaintiff was not fifty-five at the time of the Grantor's death, Paragraph 6.2(a) directed the Trustee to hold his share "as a separate Non-GST-Exempt Trust for Descendant in accordance with paragraph 6.2(c)," which as discussed below, did not automatically terminate when the Plaintiff reached the age of fifty-five.   (Document 76-1 at 9.)

The Plaintiff argues that if the Grantor intended the distribution clause in Paragraph 6.2(a) to be limited only to descendants who were fifty-five at the time of her death, she would have inserted "at the time of Grantor's death" at the end of that clause.   However, it was unnecessary for the Grantor to include such language because in Paragraph 5.4(c) she provided that Section 6.2 would apply at the time of her death.

Because Paragraph 6.2(a) applies only at the time of the Grantor's death, and because the Plaintiff was not fifty-five at the time of Grantor's death, his share is governed by Paragraph 6.2(c) based on the language of Paragraph 6.2(a) related to descendants less than 55 years of age. Paragraph 6.2(c) has its own provision relating to distributions depending on the age of the Plaintiff.   Under Paragraph 6.2(c)(v), "the Beneficiary may withdraw. . . the balance [of the trust principal] after the Beneficiary attains the age of fifty-five years," subject to the discretion of the Trustees.   (Document 76-1 at 13.)   Further, under Paragraph 6.2(c)(vi), the trust terminates "upon the earlier of the exhaustion of the trust property or the death of the" Plaintiff.   (*Id.*)   Read together, these provisions demonstrate that the trust did not terminate when the Plaintiff reached the age of fifty-five because he was not automatically entitled to receive his share held under the trust.

This reading is further confirmed when comparing the provisions of Paragraph 6.2(c) with those of Paragraph 6.2(b), which establishes a trust for Aubrey York Ayash. Specifically, Paragraph 6.2(b)(iv) provides that "[t]he Trustee shall also distribute to Aubrey. . . the entire balance of the trust property when he attains the age of fifty-five (55) years." (Document 76-1 at 10.) If the Grantor intended the same for the Plaintiff, she would have included a similar provision under Paragraph 6.2(c) rather than the above-mentioned conditions.

The Plaintiff contends that Paragraph 6.2(a) refers to "shares," while Paragraph 6.2(c) refers to "principal" and argues that because 6.2(a) refers to "shares," it controls the distribution of his share, which he is entitled to upon reaching the age of fifty-five. However, the Plaintiff's "share" is the trust "principal" because his "share" became the "principal" when it flowed into the Non-GST-Exempt trust established for him under Paragraph 6.2(c), so any effort to make a distinction is not persuasive. Moreover, if this Court were to accept the Plaintiff's interpretation, it would render the language in Paragraph 6.2(c)(v) pertaining to the Plaintiff being able to withdraw the principal upon reaching the age of fifty-five superfluous. This language would be unnecessary and meaningless if the Plaintiff were to receive an outright distribution upon reaching age fifty-five. Additionally, 6.2(a) is also applicable to Aubrey Ayash, given that it provides his share "is to be held in accordance with paragraph 6.2(b)" if, upon the Grantor's death, he had not obtained age fifty-five, (Document 76-1 at 9). Under the Plaintiff's reading, there would have been no need to include the language of 6.2(b)(iv) if Aubrey was to receive his share outright under 6.2(a). This is further indicia that the language in Paragraph 6.2(a) refers to a descendant who has reached the age of 55 at the time of the Grantor's death. Thus, the Court finds that it is clear

from a comprehensive reading of the Trust Agreement that the Grantor intended for Paragraph 6.2(c) to control the Plaintiff's share as opposed to Paragraph 6.2(a).

Because the text and structure of the Trust Agreement clearly indicate that the Grantor did not intend for the Plaintiff to receive his share outright at age fifty-five under Paragraph 6.2(a) and instead for the distribution of the Plaintiff's share to be subject to the terms of Paragraph 6.2(c), the Court finds the Defendants are entitled to summary judgment with respect to the Plaintiff's and Defendants' declaratory judgment claims.

### B. The Plaintiff's Remaining Claims

#### (1) "New" Breach of Trust Claim or Theory

As an initial matter, the Defendants argue that the Plaintiff's complaint does not contain any allegation of abuse of discretion related to their exercise of discretion under Paragraph 6.2(c) of the Trust Agreement.   They contend that, instead, the Plaintiff's claims relate to his entitlement to his share under Paragraph 6.2(a) upon reaching age fifty-five.   The Defendants further argue that because the Plaintiff is asserting a new, unpled claim, it is not properly before this Court and cannot serve as a basis for summary judgment.

The Plaintiff argues that there is nothing new about his claim because he asserted a breach of trust claim in his complaint, and the Defendants wrongly mislabel his breach of trust claim as an abuse of discretion claim.   Specifically, he contends that he pled facts in his complaint alleging that the Defendants breached Paragraph 6.2(c)(v) of the Trust Agreement by failing to investigate the Plaintiff's worthiness for his trust share.   The Plaintiff also points to his answer to the Defendants' counterclaim and discovery responses alleging the same.   The Plaintiff argues that, as a result, the Defendants were repeatedly informed about his breach of trust claim.   The Plaintiff

16

further argues that the facts he alleged fall under his breach of trust claim, and it does not matter whether the claim is labeled breach of trust or abuse of discretion so long as he alleged facts from which a claim could be derived.

The general rule is that "a plaintiff may not raise new claims after discovery has begun without amending his complaint." *Cloaninger ex rel. Estate of Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009).   If a plaintiff wishes to raise new claims, then the plaintiff must amend the complaint pursuant to Fed. R. Civ. P. 15 and 16, and "may not use its briefs in support of or opposition to summary judgment to amend a complaint." *Hexion Specialty Chemicals, Inc v. Oak-Bark Corp.*, No. 7:09-cv-105-D, 2011 WL 4527382, at *7-8 (E.D. N.C. Sept. 28, 2011).   This general rule is grounded in notice pleading, which rests on the principle that the complaint should "give the defendant fair notice of what the. . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Harris v. Reston Hosp. Center, LLC*, 523 Fed.Appx. 938, 946 (4th Cir. 2013) ("Because a complaint 'guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations,' constructive amendment of the complaint at summary judgment undermines the complaint's purpose and can thus unfairly prejudice the defendant." (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th Cir. 2000))).

Although a plaintiff may assert an alternative legal theory under a preexisting claim, that alternative theory will constitute a new claim if the theory materially alters the factual basis upon which the claim rests.  *See Wahi v. Charleston Area Medical Cntr., Inc.*, 562 F.3d 599, 616-17 (4th Cir. 2009); *see also Grand Traverse Band of Ottawa and Chippewa Indians v. Blue Cross Blue Shield of Michigan*, 146 F.4th 496, 511-12 (6th Cir. 2025) ("A plaintiff may not shift its

17

theory of liability at the summary judgment stage in a way that materially alters the pleaded factual basis of its claim and prejudices the opposing party."). In *Wahi*, the plaintiff asserted a defamation claim in his amended complaint alleging that Charleston Area Medical Center ("CAMC") was liable to him for defamation because it published reports that were false and defamatory. 562 F.3d at 616-17. On appeal, the plaintiff asserted that he was defamed when CAMC's executive vice president and chief medical officer disclosed to the local media that CAMC reported him. *Id.* at 616. The Fourth Circuit declined to consider the plaintiff's defamation claim on appeal, stating that it was not the one presented in his amended complaint. *Id.* at 617. Specifically, the Fourth Circuit explained that because the sole basis for the plaintiff's defamation claim in his amended complaint was CAMC publishing defamatory reports, his defamation claim on appeal was a new claim and therefore could not be raised without amending his complaint. *Id.* at 616-17.

The Sixth Circuit considered a similar situation in *Grand Traverse*. *See* 146 F.4th at 511-12. There, the plaintiff asserted a narrow theory in its amended complaint alleging that the defendant violated the Michigan Health Care False Claims Act (HCFCA) by failing to apply Medicare-Like Rate (MLR) rates when required. *Id.* at 512. However, on summary judgment, the plaintiff asserted that the defendant made false representations about the nature of its rates. *Id.* The Sixth Circuit affirmed the district court's grant of summary judgment for the defendant on the HCFCA claim, stating that the district court did not err by limiting the plaintiff to the theory pleaded in its amended complaint. *Id.* at 513. The Sixth Circuit explained that the plaintiff did not assert within its HCFCA count a misrepresentation-based theory, and that although the plaintiff's complaint contained factual allegations related to the misrepresentations by the

18

defendant and the HCFCA count incorporated by reference all prior allegations, the HCFCA count contained a specific factual basis for the claim.   *Id.* at 512.   As such, the Sixth Circuit reasoned that the plaintiff's shift in legal theories deprived the defendant of notice because it was reasonable for the defendant to read "the HCFCA claim as being based on [its] alleged failure to apply MLR, rather than its misrepresentations," since the plaintiff "reserved the misrepresentation allegations for its fraud-based theories and omitted them from the HCFCA count."   *Id.*

The Plaintiff's breach of trust claim relating to Paragraph 6.2(c)(v) is different than the breach of trust claim alleged in the complaint and therefore, should have been raised in an amended complaint rather than in his motion for summary judgment.   Just as the plaintiffs in *Wahi* and *Grand Traverse* supported their claims with a specific factual basis, the Plaintiff based the breach of trust claim in his complaint on his entitlement to his share under Paragraph 6.2(a) upon reaching age fifty-five and the assertion that the Defendants had no discretion to withhold his share. Specifically, under his breach of trust count, the Plaintiff asserted that the Defendants breached the terms of the Trust by "fail[ing] to distribute Mr. Ayash's share of the Trust property according to the unambiguous terms of the Trust," which "*required* the defendants [to] distribute Mr. Ayash's share of the Trust property to him when he turned fifty-five."   (Pl.'s Compl. at ¶¶ 27-29.) Nothing in these allegations places the Defendants on notice of a claim related to their discretion under Paragraph 6.2(c)(v).   The Plaintiff asserts a narrower claim, and basing his breach of trust argument on an abuse of discretion under Paragraph 6.2(c)(v) as opposed to the alleged failure to disburse the Plaintiff's share, represents a substantial shift from the basis specifically asserted in his complaint.

Although the Plaintiff argues that his claim is not new because he pled facts in paragraphs 14-17 of his complaint that tend to allege that the Defendants breached Paragraph 6.2(c)(v) of the Trust, the Plaintiff failed to include those factual allegations within his breach of trust claim. Additionally, while the Plaintiff's complaint, like the complaint in *Grand Traverse*, incorporated by reference all prior factual allegations, because the Plaintiff asserted a narrower claim based on Paragraph 6.2(a), it cannot be said that the specific facts alleged by the Plaintiff are tied to his asserted breach of trust claim.   It, therefore, would be reasonable for the Defendants to read the Plaintiff's breach of trust claim as not encompassing those facts.   The Plaintiff may have had better footing if he asserted a more general breach of trust claim that was not tied specifically to Paragraph 6.2(a). By specifically alleging the basis for the breach of trust claim that does not include Paragraph 6.2(c)(v), the Defendant did not have the requisite notice.

The Plaintiff argues that even if it is not clear that he asserted a breach of trust claim under Paragraph 6.2(c)(v), the Defendants received notice during discovery that he was asserting such a claim.   However, many courts have declined to permit a plaintiff to constructively amend the complaint by raising new claims in a motion for summary judgment despite the Defendants receiving notice of the claim during discovery.   *See, e.g.*, *In re Mutual Funds Inv. Litigation*, 608 F.Supp.2d 670, 671 (D. Md. 2009); *Supinger v. Virginia*, 259 F.Supp.3d 419, 440-41 (W.D. Va. 2017); *Hexion*, No. 7:09-cv-105-D, 2011 WL 4527382, at *7-8 (E.D. N.C. Sept. 28, 2011). Permitting a plaintiff to constructively amend the complaint through a motion for summary judgment would render "Rule 15 and 16 and trial court scheduling orders. . . meaningless." *Hexion*, No. 7:09-cv-105-D, 2011 WL 4527382, at *8 (E.D. N.C. Sept. 28, 2011).   Because the Plaintiff failed to amend his complaint within the applicable time frame to include his claim, he

20

cannot constructively amend his complaint by asserting it in his motion for summary judgment. Accordingly, the Plaintiff's breach of trust claim based on Paragraph 6.2(c)(v) is not one that is properly before the Court.

### (2) Asserted Breach of Trust and Breach of Fiduciary Duty Claims

Turning to the Plaintiff's remaining claims, given that those claims are related to Paragraph 6.2(a) and this Court previously determined that the Plaintiff was not entitled to receive his share under Paragraph 6.2(a), the Defendants did not breach Paragraph 6.2(a) by failing to distribute the Plaintiff's share upon his reaching age fifty-five, nor did they breach any fiduciary duty by failing to do so. Accordingly, the Defendants are entitled to summary judgment on the Plaintiff's asserted breach of trust and breach of fiduciary duty claims.

### C.  Attorneys' Fees and Costs

Having found that the Defendants are entitled to summary judgment on all of the Plaintiff's claims and their declaratory judgment claim, this Court must now determine whether to award the Defendants' attorneys' fees and costs.   The Defendants argue that they are entitled to an award of attorneys' fees and costs under West Virginia Code § 44D-10-1004 because this is the third lawsuit between the parties in which the Defendants have had to defend an action relating to their administration of the Trust Agreement.   The Plaintiff responds by arguing that although this is the third lawsuit between the parties, "there is nothing unjust or inequitable about Mr. Ayash's attempts to enforce his rights under the Trust."   (Pl.'s Resp. at 11.)   The Plaintiff further argues that to the extent the Defendants request an award for attorneys' fees and costs to receive compensation for administering his trust, they have received such compensation by charging a higher rate due to previous litigation relating to such administration.

West Virginia Code § 44D-10-1004, a provision of the West Virginia Uniform Trust Code, provides that "the court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party" in a case involving the administration of a trust. W. Va. Code § 44D-10-1004.   Although this Court has discretion under Section 44D-10-1004 to award attorneys' fees and costs, the Court finds no basis in justice or equity to do so under the circumstances presented in this case.   While it is true that this is at least the third lawsuit between the Plaintiff and the Defendants involving the Trust Agreement, as this Court previously determined, the 2015 lawsuit was voluntarily dismissed and the issues presented in this case were never litigated and are different from those presented in the 2013 lawsuit.   Even though this Court found Paragraph 6.2(c) controls rather than Paragraph 6.2(a) and found the Defendants were entitled to summary judgment on their declaratory judgment claim and all the Plaintiff's claims, the Court finds an award of fees and costs would be inappropriate in this matter brought to resolve a dispute regarding the proper interpretation of the Trust Agreement that was never litigated in the prior litigation.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Plaintiff Christopher Ayash's Motion for Summary Judgment* (Document 76) be **DENIED**.   The Court further **ORDERS** that the *Defendants'/Counterclaim Plaintiffs' Motion for Summary Judgment* (Document 82) be **GRANTED** to the extent that it pertains to the Defendants' declaratory judgment claim and all of the Plaintiff's claims and **DENIED** to the extent that it pertains to the Defendants' request for attorneys' fees and costs.   The Court **ORDERS** that any pending motions be **TERMINATED as moot**.

22

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:    January 13, 2026

*Irene C. Berger*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

23